ISAAC A. WING *vs.* L. A. BRADSTREET & SONS COMPANY.

Cumberland.   Opinion March 10, 1916.

*Fellow Servant.    Incompetent Fellow Servants.    Master providing*
*Necessary and Proper Appliances.    When Vice-Principal*
*may become a Fellow Servant.*

1. In an action for injuries received by a servant when an elevator fell, evidence held insufficient to show that the one in charge of the engine and foot brake controlling the elevator was incompetent because he had lost one of his feet.

2. A construction company which operated an elevator inside of a building it was erecting some distance from the engine which supplied the motive power, having established a system of bells to regulate operation, and printed the directions in plain hand, was not negligent in providing that method of operation.

3. Where plaintiff's fellow servant, who rang the bell to notify the engineer that they desired the elevator to descend, failed to give the proper signal for a loaded cage, and plaintiff was injured by the falling of the cage, there can be no recovery, the negligence being that of a fellow servant.

4. Where the vice principal of the defendant master temporarily took the place of the engineer who operated the engine running an elevator, such vice principal under the circumstances became a fellow servant of the other employes for whose negligence in operating the elevator there can be no recovery, it not appearing that he was an incompetent person.

Action on the case to recover damages for personal injuries sustained by the plaintiff while riding in the elevator of the defendant company.   Defendant pleaded general issue.   Verdict for plaintiff. Motion for new trial filed by defendant.   Motion sustained.   New trial granted.

Case stated in opinion.

*Thomas A. Sanders, and Charles E. Gurney,* for plaintiff.

*Newell & Woodside,* for defendant.

SITTING:   SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

HALEY, J.  This is an action on the case to recover damages for personal injuries received by the plaintiff in December, 1913, while at work as a carpenter in the employ of the defendant on the construction of an addition to a shoe factory in the city of Auburn. The verdict was for the plaintiff, and the case is before this court on defendant's motion to set aside the verdict.

The accident happened December 5, 1913, at which time the plaintiff had been working as a carpenter upon the building about three weeks.  The building was of brick construction, and three stories above the basement.  At the time the plaintiff was injured the workmen were working on the third floor and above it; the material and stock used were carried from the first floor and basement by means of a freight or construction elevator.  The elevator was operated by a hoisting engine located in a temporary building, partly on the sidewalk and partly in the street.  The engine was attached to a drum, upon which was a wire cable which extended horizontally into the building where it went under a sheave or wheel, thence perpendicularly to the third floor going over a sheave, thence horizontally over another sheave and down to connect with the crosshead timber of the elevator.  The elevator ran up and down through openings in the floor, and was kept in place by upright timbers or planks.  The end of the cable opposite the drum, after going over the sheaves, was attached to the crosshead of the elevator, and the sheaves were attached to the cross timbers, forming the top of a horse; and as the work of construction progressed the horse was moved up from story to story and put in position.  The elevator could not be seen by the engineer, except when in the basement or on the ground floor, and was operated by signals given by means of a push button connected by wire with a bell in the engine room. The push button was placed on a cross piece and nailed to the legs of the horse.  On one of the legs of the horse, toward the rear of the building, directions were written regulating the number of bells, the defendant claims one bell to go up, two bells to lower when empty, and three bells to lower when loaded.  These directions were written with a carpenter's pencil, large enough to be seen and read by people using the elevator, and were a short distance from the button.  The elevator was so balanced that the friction of the cable on the drum would retard the motion of the elevator when empty,

so that it would descend slowly to the basement. When the elevator was descending unloaded it was disconnected from the engine, and when loaded was controlled by a friction clutch and foot brake, the clutch being operated by the right hand, and the brake by the left foot.

Pearl Bradstreet was a director of the defendant company and the superintendent of construction of this building, having charge of the laborers, carpenters and bricklayers. There were other bosses who had charge of the different crews.

At the time of the accident the engineer, who had charge of the engine which operated the elevator, was in the engine room, it being his time off for dinner, and Pearl Bradstreet, above named, took the engineer's place and was operating the engine at the time of the accident. There was stone to be unloaded from a jigger, and to unload it they required a dolly, an appliance in common use in the handling of stone and heavy timbers. The dolly was on the third floor, where it had been used in handling stone. Mr. Rankin, the boss of the laborers, went from the ground floor with the elevator to the third floor for this dolly. While loading it on to the elevator he asked some of the carpenters, among whom was the plaintiff, to go down and assist in unloading the stone. The plaintiff and two other carpenters boarded the elevator where Rankin was, and as they did so Brown, one of the carpenters, pushed the button twice, thereby giving two bells in the engine room, which the defendant claims meant to the engineer for the elevator to come down empty. Bradstreet released the clutch and brake and the elevator started down immediately with the four men and dolly upon it. As the drum was loose it descended with great speed. Mr. Bradstreet saw by the marks on the cable that it was coming down more rapidly than usual, and attempted to apply the friction clutch and foot brake, but not in time to decrease the speed. The elevator struck the basement floor with great force, and the plaintiff received the injuries complained of.

The negligence alleged in the writ is that "the said defendant corporation, wholly unmindful of its duty and obligation to the plaintiff in this regard and totally disregarding the same, carelessly, negligently and wantonly, and without proper regard to its duties and obligations to the plaintiff, employed and permitted one Pearl

Bradstreet, a director and officer of the defendant corporation to operate, manage and run the said engine used for the hoisting and lowering of the elevator herein complained of, which said Pearl Bradstreet, as aforesaid, was physically incapable and incompetent by reason of physical infirmity, misfortune and inexperience, to operate, run and manage the aforesaid engine, and the said Pearl Bradstreet at the time of the injuries herein complained of, by reason of his physical infirmity, misfortune, weakness and defects, lost control of said engine, its brakes and other essential component parts with the result that the said elevator, upon which the said plaintiff was standing, as hereinbefore set out, dropped quickly, suddenly and with great force to the basement of said building."

And in the second count it is averred that when the plaintiff "stepped upon the elevator in company with other fellow workmen, expecting and intending to be lowered and carried down by said elevator to the place where said stone was to be moved, to wit, the basement of said building, when said elevator was negligently, carelessly and without proper supervision by the said defendant corporation through its servants and agents, dropped quickly and with great force to the basement of said building, and said plaintiff, who was then (still) upon said elevator in its said descent, was thrown down with great force," and the plaintiff received the injuries set forth.

It is admitted that the engine, elevator and appliances were of the approved type, and all in perfect order, and there is no intimation that any defect in them contributed in any way to the accident. Was Pearl Bradstreet, who, at the time of the accident was in charge of the engine which raised and lowered the elevator, an incompetent person to manage the elevator and its appliances? Several years prior to this accident Mr. Bradstreet had lost his right foot and a portion of his leg extending to a few inches above the knee, which had been replaced by an artificial limb. He had been in charge of the construction of buildings for eight or nine years, and had operated this and other engines for elevator purposes, going up and down ladders, over roofs, into cellars and all over the buildings under construction, without difficulty. He was operating the elevator and its connections at the time of the accident. The clutch and brake controlled the operations of the elevator, and there was a

seat which the engineer occupied when handling the engine and elevator. Mr. Bradstreet was seated on this seat with his hand on the clutch and his left foot on the brake. It is urged that he was incompent on account of the loss of his right leg; but all that he had to do with his feet was to use his left foot on the brake, and he surely was as competent to use his left foot on the brake as he would have been if he had had a right foot. And the fact that for many years he had had charge of the building of large buildings and had had no difficulty in going to all parts of them, and during the same period had had experience in operating and hoisting engines and elevators, and no evidence in the record tending to show his incompetency, except as argued by the plaintiff from the fact that he had lost his right foot and part of his right leg, falls far short of proof that he was incompetent to operate the engine and elevator.

It is claimed by the plaintiff that two bells, as given by the man Brown, was the signal to lower the elevator, and that there was no difference in the signals to lower the elevator when loaded and when light, and that Mr. Bradstreet should have had control of the elevator with the clutch and brake the same as he would have had control if loaded, so that it could not have dropped as it did. It was the duty of Mr. Bradstreet, acting as engineer, to have control of the engine and elevator, and it was also his duty to obey the signals given him by the electric bell in the raising and lowering of the elevator. The elevator had to be operated by signals, because the engine was in another building where the engineer could not see what was wanted of him, and the electric bell was a proper appliance to notify him, and if he obeyed the signals it would not be neglect upon his part.

The evidence very clearly shows that there was printed in letters large enough for any one to see who was using the elevator the three signals, one, up; two, to go down light; three, to go down loaded. It is true that some of the witnesses who had worked upon the building from its beginning said they did not so understand it, some that they did not see the notice printed near the bell; but there had to be some signals that were used in building this large building, three stories high, and the workmen must necessarily have known of those signals, and it is incredible that the workmen could use that elevator in carrying up the bricks, mortar, stone, iron and lumber

to construct so large a building and know nothing of them, and if the signals were as testified to by the defense, and as shown by the man who printed them to be as claimed by the defense, then the witness Brown, who gave the signal of two bells when he should have given the signal of three bells, was the negligent party, and for his negligence the defendant is not liable, because it was the negligence of a fellow servant, and it was not negligence of the man acting as engineer to operate the elevator according to the signals received by him. Mr. Brown testified that the elevator started when he gave two bells and before he could give the third bell. If his testimony was true, he would have tried to push the button for the third bell, and the electric bells could have been rung three times in a fraction of a second. Having given two bells, if he had wanted to give three, he could have given the third by raising his finger from the button a mere trifle and replace it, all of which could have been done while the elevator was moving a few inches.

But if it was the duty of the engineer to have control of the elevator, and to have controlled its speed with the clutch and brake while lowering it, if the signal of two bells was a signal for him to lower it that way, it was negligence upon his part not to control it, but as a director and superintendent of the defendant company having charge of the construction of the building, he was a vice-principal of the defendant in performing the duties that the principal should perform, and for any negligence by him of the duties that the principal should perform the defendant is liable; but when he did the work of the engineer, whose duty it was to run the engine and raise and lower the elevator, he ceased to be vice-principal, and in performing those duties he was a fellow servant of the plaintiff, the same as the engineer would have been if he had been performing the services, and for the negligence of a fellow servant, when not performing the duties of the principal, the defendant is not liable, unless the fellow servant was incompetent, and that fact was known to the defendant, or the defendant, by the exercise of due care, should have known he was incompetent. As the evidence conclusively shows that the defendant had provided all necessary and proper appliances, viz., engine and elevator, and there being no evidence that authorized the jury to find that Pearl Bradstreet was incompetent to operate the engine and elevator, and as in performing

the duties of engineer said Bradstreet was a fellow servant of the plaintiff, for whose negligence, if any, while acting as a fellow servant, the defendant was not liable, *Small* v. *Manufacturing Co.,* 94 Maine, pp. 554-555, there was not evidence which authorized the verdict for the plaintiff.

*Motion sustained.*
*New trial granted.*